IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|       Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13-10200-01 MLB |
| | ) | |
| TERRY L. LOEWEN, | ) | |
|       Defendant. | ) | |
| _____ | ) | |

## MOTION TO DISMISS AND BRIEF

COMES NOW the defendant, Terry L. Loewen, by and through his counsel, Timothy J. Henry and John K. Henderson, Jr., Assistant Federal Public Defenders for the District of Kansas, and moves this Court to dismiss the charges contained in the Indictment upon the following grounds rooted in the Fifth Amendment's Due Process Clause and the First Amendment's rights to Freedom of Speech, Religion and Association.   These grounds include **a)** entrapment as a matter of law; **b)** exercise of Court's Supervisory Powers to dismiss due to Government's abuse of defendant's First Amendment rights; and **c)** outrageous governmental misconduct.   On behalf of this motion, defendant states as follows:

Terry Loewen is charged in a three-count indictment alleging attempted use of a weapon of mass destruction in violation of 18 U.S.C. § 2332a(a)(2)(D) (count 1), attempted use of an explosive device in violation of 18 U.S.C. § 844(i) (count 2), and attempted material support for a designated foreign terrorist organization in violation of 18 U.S.C. § 2339B(a) (count 3).   *See* Docket # 9.  Terry Loewen has pleaded not guilty to all counts and intends to raise the factual defense of entrapment before the jury in this case.

However, the facts present in this case would also permit this Court to dismiss this case on the aforementioned **legal** grounds, if it so chooses.   Because the facts support a finding that

defendant was not predisposed to commit these crimes when the Government set in motion its plan by FBI Employee # 1 to befriend and then radicalize defendant; and that later involvement by both FBI Employee # 1 and # 2 to induce defendant to assist in what was clearly FBI's plan to commit the acts charged in the Indictment by an inert explosive device, the defense team believes this Court can dismiss this case at the pretrial motion stage of this prosecution.

Counsel would note that a ruling denying this motion would simply allow the evidence to proceed to a jury's determination on the issue of entrapment.   Yet, the defense team believes these matters are strong enough to be raised at the pretrial motion stage.

<u>ARGUMENT AND AUTHORITIES</u>

"The function of law enforcement is the prevention of crime and . . . that function **does not include the manufacturing of crime**."   *Sherman v. United States*, 356 U.S. 369, 372 (1958) (emphasis supplied).   In *Sherman*, a unanimous Supreme Court held entrapment occurs "when 'the criminal conduct was the product of the creative activity' of law enforcement officials."   *Id.* at 372, quoting *Sorrells v. United States*, 287 U.S. 435, 441 (1932).

> In their zeal to enforce the law, however, Government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute.[]   Where the Government has induced an individual to break the law and the defense of entrapment is at issue, as it was in this case, the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act **prior to first being approached by Government agents**.

*Jacobson v. United States*, 503 U.S. 540, 548-549 (1992) (citation omitted) (emphasis supplied).

As cited previously in defendant's motion for discovery, the criminal "act" is that which is charged in the three counts contained in the Indictment.   As the Supreme Court held in its seminal decision on entrapment, "**evidence that merely indicates a generic inclination to act**

**within a broad range, not all of which is criminal, is of little probative value in establishing predisposition**." *Jacobson*, 503 U.S. at 550 (emphasis supplied).  Thus, it remains clear that predisposition is inextricably linked to the **charged** illegal acts, and not other crimes or a general contempt for one's government.  *See also United States v. Mayfield*, 771 F.3d 438 (7th Cir. 2014) (*en banc*) (Since *Sherman*, "the [Supreme] Court has said that 'the principal element in the defense of entrapment [i]s the defendant's predisposition to commit *the* crime'—not just *any* crime.  *Russell*, 411 U.S. at 433, 93 S. Ct. 1637 (emphasis added).").

**a) Entrapment as a matter of law.**

"As was explained in *Sherman*, where entrapment was found as a matter of law, "the Government [may not] pla[y] on the weaknesses of an innocent party and beguile[e] him into committing crimes which he otherwise would not have attempted."  *Jacobson*, 503 U.S. at 553, quoting *Sherman*, 356 U.S. at 376.  *Jacobson*, like *Sherman*, were cases where the Supreme Court found entrapment as a matter of law.

Whether the government has "induced" a person to commit the offense(s) charged has never required much evidence to obtain the entrapment instruction.  *See e.g., Mayfield*, 771 F.3d at 440, ("But this initial burden of production is not great.  An entrapment instruction is warranted if the defendant proffers "some evidence" that the government induced him to commit the crime . . ."), quoting *Pillado*, 656 F.3d at 764; *see also, United States v. Vincent*, 611 F.3d 1246, 1250 (10th Cir. 2010) ("Inducement is government conduct which creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense."), citing *United States v. Scull*, 321 F.3d 1270, 1275 (2003) (quotations omitted).

The Seventh Circuit's *en banc* opinion in *Mayfield* put this issue in a more historical light based upon Supreme Court precedent:

> Retracing the Supreme Court's key entrapment cases may help illuminate the problem and point toward a solution. In *Sorrells* the Court found that an entrapment instruction was warranted even though the defendant was promised no extravagant profit for obtaining alcohol for the undercover informant; the informant's persistent appeal to military camaraderie qualified as a potentially entrapping inducement. 287 U.S. at 441, 53 S. Ct. 210. In *Sherman* the Court found entrapment as a matter of law even though the defendant was offered little more than reimbursement for his costs if he would obtain heroin; the inducement there consisted of repeated requests from an informant posing as a fellow recovering addict who has fallen off the wagon. 356 U.S. at 371, 78 S. Ct. 819. In *Jacobson* the Court found entrapment as a matter of law where the defendant took up a relatively standard offer to purchase child pornography; the inducement in that case was a two-year campaign of fake mail-order entreaties conditioning the defendant to believe that child porn was acceptable and encouraging him to purchase it. 503 U.S. at 546-47, 112 S. Ct. 1535.
>
> Nothing about the transactions at issue in *Sorrells, Sherman,* and *Jacobson* can be characterized as "extraordinary" as that term is colloquially understood. The entrapment defense was available because the government's solicitation of the crime was accompanied by subtle and persistent artifices and devices that created a risk that an otherwise law-abiding person would take the bait. The ploys were not "extraordinary" in the strong sense of that word, but they exceeded the typical sting in which the government merely offers an ordinary opportunity to commit a crime, without more.

*Mayfield*, 771 F.3d at 434. The facts underlying these three cases by the Supreme Court were found to support entrapment as a matter of law. Defense counsel will file a supplemental filing under seal specifying the particular nature of the sensitive evidence it deems to be improper inducement amounting to entrapment as a matter of law. To the defense, this evidence clearly qualifies as inducement when viewed in light of the above Supreme Court jurisprudence.

This case is clearly not the "ordinary" or "typical" entrapment scenario for which courts or counsel are familiar with. That scenario usually surrounds the selling of controlled substances where the seller is predisposed to sell to an undercover agent because that is the business the seller

is in, and probably evidenced by prior convictions for selling drugs.   As pointed out in *Jacobson*:

> Thus, an agent deployed to stop the traffic in illegal drugs and, if the offer is
> accepted, make an arrest on the spot or later.   In such a typical case, or in a more
> elaborate "sting" operation involving government-sponsored fencing where the
> defendant is simply provided with the opportunity to commit a crime, the
> entrapment defense is of little use because the ready commission of the criminal
> act amply demonstrates the defendant's predisposition.

*Id.* at 549-550.   Here, no such evidence appears to exist.   This is clearly an **a**typical case.

The inducement and predisposition the Government would appear to rely upon are the very conversations with the defendant that evolved over time with, at first FBI Employee # 1, and then later with FBI Employee # 2.   The inducement was not simply offering defendant to commit an ordinary crime, as with someone familiar with the drug trade, but was "'subtle, persistent, [and] persuasive' conduct by these government" employees on a matter that clearly was not ordinary or typical.   *See Mayfield*, 771 F.3d at 434, quoting *United States v. Pillado*, 656 F.3d 754, 765 (7th Cir. 2011).

First, because predisposition must already exist before first coming into contact with FBI Employee # 1, which appears to have occurred near the date a "full investigation" was opened in this case in early June of 2013, the content of the conversations that followed would be of little support to the Government to prove predisposition.   However, they are of greater support to the defense to prove governmental inducement by the FBI.   As has been previously disclosed in the affidavit to the Complaint in this case, as late as October 5, 2013, Terry Loewen unwittingly admitted to FBI Employee # 1 that "[y]ou are the only person I have any contact with on the jihad issue[.]"   *See* Complaint, Docket # 1, p. 14, ¶ 20.   Defense counsel submit the discovery so far provided supports a finding of entrapment as a matter of law from the conversations FBI Employee # 1 and # 2 had with defendant during the length of this investigation.

**a)(1)    Predisposition also requires a present ability to commit the crimes prior to governmental contact, something defendant never had and, therefore, supports a finding of entrapment as a matter of law.**

Although not necessarily adopted by the Tenth Circuit, the Seventh Circuit in its *en banc* decision in *Mayfield*, *supra*, reiterated its position in *United States v. Hollingsworth*, 27 F.3d 1196 (7th Cir. 1994) (*en banc*), that for the government to win on the issue of predisposition, it must be proved that the defendant had the present ability to carry out the crime on his or her own. *Mayfield*, 771 F.3d at 436, quoting *Hollingsworth*, 27 F.3d at 1200 ("The defendant must be so situated by reason of previous training or experience or occupation or acquaintances . . ."). However, here, the Government's own affidavit to its Complaint argues against this very point.

First, Terry unwittingly acknowledged he knew "nothing about explosives[,]" "I'm sure I am not as ready as I think I am," and "Understand I have NO experience [sic] in things like this." *See* Complaint, Docket # 1, p. 10, ¶ 13.   Second, as late as October 5, 2013, Terry unwittingly admitted to FBI Employee # 1 that "[y]ou are the only person I have any contact with on the jihad issue[.]"   *See* Complaint, Docket # 1, p. 14, ¶ 20.   Thus, not only was he incapable of building a bomb, he had no criminal acquaintances leading him down this path, but for the FBI employees. In fact, it is not possible, or realistic to believe that the explosive materials here or detonator cord are simply able to be bought off the shelf of one's local hardware store.   Strict BATFE regulations require licensing and permits prevent such access.   *See generally* 27 CFR §§ 555.1 *et sec.*, and *specifically* 27 CFR § 555.41.

Whether or not the Seventh Circuit's heightened standard (that predisposition requires a "readiness" or "present ability" at the time first contacted by FBI Employees # 1 and # 2) is adopted by this Court, the defense submits the discovery provided by the Government supports a

finding of entrapment as a matter of law based upon the conversations FBI Employees # 1 and # 2 had with defendant continuing through to the point of defendant's arrest on December 13, 2013.

**b)   Abuse of defendant's First Amendment rights requires this Court to exercise its Supervisory Powers to dismiss these charges.**

"If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989) (flag burning as protected speech). "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (re: Anti Animal Cruelty statute), quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002).   "The Nation well knows that one of the costs of the First Amendment is that it protects the speech we detest as well as the speech we embrace." *United States v. Alvarez*, ___ U.S. ___, 132 S. Ct. 2537, 2251 (2012) (Stolen Valor Act).

Supreme Court's decisions that deal with speech on "any matter political, social, or other concern to the community" is protected under the First Amendment.   *See Snyder v. Phelps*, 562 U.S. 443, 131 S. Ct. 1207, 1216 (2011), quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983). These protections, likewise, apply to speech concerning one's religion or faith.   The only limitation on the First Amendment speech is speech that incites imminent lawless action.  *See Brandenburg v. Ohio*, 395 U.S 444 (1969) (KKK rally deemed protected speech).   Even abstract teaching of moral necessity to resort to violence was not the same as incitement to violence.  *Id.* Thus, for example, one's position in the debate in the United States over the use of drones overseas in predominantly Muslim countries may or may not turn on whether one is Muslim, or whether one has a child serving in the U.S. military services.   And these conversations, these political

debates, are not left only for the "talking heads" of the weekend media, but are of ongoing concern to many in the public; and their outlet has continued to be, as here, through social media and the Internet.   It is here where the Government's intervention, this "preemptive prosecution" begins; and it is here where it should end.

Defendant Terry Loewen has practiced many religions as an adult.   In December of 2008 he converted to Islam, and over the course of the following years continued to grow and understand his new faith without building a bomb.   Understandably, he grew concerned over the use of force by the United States overseas.   Such concern is shared by many as it would appear the body politic of the United States appears evenly split.   No matter what side of this huge chasm one may be on, no one can deny that the right to express one's belief, one's outrage, or one's speech, religious or political, is protected by the First Amendment.   Yet, it is this protected speech by the defendant that not only drew the attention of the FBI, but ultimately led them to their investigation and prosecution of the defendant in this case.

Not only is it clear this speech is protected under the First Amendment's jurisprudence, it is abhorrent to our Constitutional system of justice to use this speech to target a U.S. citizen over the course of many months to the point where he would become involved in an offense that he would not have without the inducement by FBI Employees # 1 and # 2.

This procedural "preemptive prosecution" may have been borne in the wake of 9/11, but is contrary to our values as a Nation and, in hindsight, should be rejected by this Court's exercise of its supervisory powers:

> "[G]uided by considerations of justice," *McNabb v. United States*, 318 U.S. 332, 341, 63 S. Ct. 608, 613, 87 L. Ed. 819 (1943), and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress.   The purposes

underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights, *McNabb*, *supra*, 318 U.S. at 340, 63 S. Ct. at 612; *Rea v. United States*, 350 U.S. 214, 217, 76 S. Ct. 292, 294, 100 L. Ed 233 (1956); to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, *McNabb*, *supra*, 318 U.S. at 345, 63 S. Ct. at 615; *Elkins v. United States*, 364 U.S. 206, 222, 80 S. Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960); and finally, as a remedy designed to deter illegal conduct, *United States v. Payner*, 447 U.S. 727, 735-736, n. 8, 100 S. Ct. 2439, 2446-2447, n. 8, 65 L.Ed.2d 468 (1980).

*United States v. Hastings*, 461 U.S. 499 (1983).

This Court's exercise of its supervisory powers would not only remedy the violation of defendant's First Amendment rights that this prosecution represents, but would also preserve the integrity of the Judicial Branch that ensures those brought before it in criminal matters are brought under appropriate considerations, and it would deter the illegal practices of law enforcement that affect the constitutional rights of a free society. Although this Court could let these matters play themselves out in court over the issue of entrapment, such practice of "preemptive prosecution" should be discouraged forcefully by the Judicial Branch, especially where one's First Amendment rights are at the center of why this case was even investigated and brought to court.

**c)   Outrageous governmental conduct.**

If angels were to govern men, neither external nor internal controls on government would be necessary. In framing a government which is to be administered by men over men, the great difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself.

James Madison, *Federalist No. 51*.

An alternative to the aforementioned request for this Court to use its supervisory powers is for it to find the Government's conduct in this prosecution is so outrageous in its violation of defendant's First Amendment rights as to offend canons of decency and fairness that require dismissal under the Fifth Amendment's Due Process Clause.

9

"[T]he relevant inquiry" when assessing claims of outrageous government conduct "is whether, considering the totality of the circumstances . . . the government's conduct is so shocking, outrageous and intolerable that it offends the 'universal sense of justice.'"  *Lacey*, 86 F.3d at 964, quoting *United States v. Mosley*, 965 F.2d 906, 910 (10th Cir. 1992), *United States v. Russell*, 411 U.S. 423, 432, 93 S. Ct. 1637, 36 L.Ed.2d 366 (1973).  This court has recognized the defense of outrageous conduct, *United States v. Spivey*, 508 F.2d 146 (19th Cir. 1975), but has never rendered a decision upholding such a claim.  "The absence of any decision by this court upholding such a claim . . . bears testament to its narrow scope." *Lacey*, 86 F.3d at 964.  "To succeed on an outrageous conduct defense, the defendant must show either (1) excessive government involvement in the creation of the crime, or (2) significant governmental coercion to induce the crime." *United States v. Pedraza*, 27 F.3d 1515, 1521 (10th Cir. 1994).

*United States v. Garcia*, 411 F.3d 1173, 1181 (10th Cir. 2005).   As has been argued earlier in this motion, either manner of outrageous government conduct applies here.   Probably no more so than their excessive involvement in the creation of the crime they sought to prosecute; but also in their subtle, yet coercive, efforts used in inducing defendant to commit this crime.   This Court does not have to wait for an entrapment defense to play itself out.   This Court can find under any of the arguments made herein that this prosecution should proceed no further.

The Tenth Circuit recently discussed the state of the "outrageous governmental conduct defense" that has its origins in *United States v. Russell*, 411 U.S. 423 (1973).

What a plurality said in *Hampton*, a majority later repeated in *United States v. Payner*, 447 U.S. 727, 100 S. Ct. 2439, 65 L.Ed.2d 468 (1980).   There, the Court indicated that "even if we assume [the government's conduct] was so outrageous as to offend fundamental 'canons of decency and fairness,' the fact remains that '[t]he limitations of the Due Process Clause . . . come into play only when the Government activity in question violates some protected right of the *defendant*.'" *Id.* at 737 n. 9, 100 S. Ct. 2439 (internal citation omitted).   The Supreme Court has since reminded us—regularly—that we are not to reverse convictions simply to punish bad behavior by governmental agents, **but should do so only when the bad behavior precipitates serious prejudice to some recognized legal right of the particular defendant before us.** []

*United States v. Dyke*, 718 F.3d 1282, 1285 (10th Cir. 2013) (citations omitted) (emphasis

supplied).   Here, the cloud created by the FBI's domestic counterterrorism practices which violated the clear exercise of defendant's First Amendment rights must be acknowledged and corrected by the dismissal of this Indictment.

Even the FBI's Domestic Investigations and Operations Guide (DIOG) discusses these issues and procedures, but apparently was not followed in this investigation.   *See* DIOG § 4.1.1 ("maintaining [a] rigorous obedience to the Constitution.").   To accomplish this "rigorous obedience to the Constitution[,]" all investigative activities must be conducted for an "authorized purpose."   *See id.* § 4.1.2.   This section then narrows what the FBI is authorized to do at these initial stages prior to the opening of their "full" investigation.

> It is important to understand how the "authorized purpose" requirement and those constitutional limitations relate to one another.   For example, **individuals or groups who communicate with each other or with members of the public <u>in any form in pursuit of social or political causes—such as opposing war or foreign policy, protesting government actions, or promoting certain religious beliefs—have a First Amendment right to do so.</u>**   **No investigative activity may be conducted for the sole purpose of monitoring the exercise of these rights.**

DIOG § 4.1.2 (emphasis supplied); *see also*, *id.*, § 3.3.1.4.

First Amendment protected speech is not a violation of law, unless it is deemed an incitement to **imminent** lawless action. *See Brandenburg v. Ohio*, 395 U.S. 444 (1969) (emphasis supplied); *see also, Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("The government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.").   Speech over the Internet with people one may or may not know can never be deemed "imminent" or criminal.

For this Court to find for the defense of outrageous governmental conduct, the prosecution must violate a protected legal right which, here, exists under the First Amendment.   The

Government not only created this crime, they later induced the defendant to join the FBI in its commission.   As such, this Court cannot simply ignore the defense of outrageous governmental conduct here.   Following *Garcia*, *supra*, either prong of the test employed for this defense is met. That is, the excessive government involvement in the creation of the crime would clearly qualify under the present facts in this case, as would the significant government coercion to induce this crime by the questionable practices employed by the FBI that will be addressed in defense counsel's supplemental filing.

WHEREFORE, for the above and foregoing reasons, defendant prays this Court dismiss this case upon a finding of Entrapment as a Matter of Law or upon the Court's supervisory powers due to the Government's practices which violated defendant's protected First Amendment Rights and amounted to outrageous governmental conduct.

Respectfully submitted,

MELODY BRANNON EVANS
Federal Public Defender

s/Timothy J. Henry
TIMOTHY J. HENRY
KS Sup. Ct. No. 12934
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: tim_henry@fd.org

s/John K. Henderson, Jr.
JOHN K. HENDERSON, JR.
KS Sup. Ct. No. 19022
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: john_henderson@fd.org

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 2, 2015, I electronically filed the foregoing MOTION

TO DISMISS AND BRIEF with the Clerk of the Court by using the CM/ECF system which will

send a notice of electronic filing to the following:

        Anthony W. Mattivi
        Office of United States Attorney
        290 US Courthouse
        444 SE Quincy
        Topeka, KS 66683-3592

        David C. Smith
        Office of United States Attorney
        500 State Avenue, Suite 360
        Kansas City, KS 66101

        Erin Creegan
        U.S. Department of Justice
        950 Pennsylvania Avenue, NW
        Washington, DC 20530

One copy sent via U.S. Mail to:

        Terry L. Loewen
        c/o Sedgwick County Detention Facility
        141 W. Elm Street
        Wichita, KS   67203


s/John K. Henderson, Jr.                s/Timothy J. Henry
JOHN K. HENDERSON, JR.           TIMOTHY J. HENRY
KS Sup. Ct. No. 19022                 KS Sup. Ct. No. 12934
Assistant Federal Public Defender      Assistant Federal Public Defender
Federal Public Defender Office         Federal Public Defender Office
301 N. Main, Suite 850               301 N. Main, Suite 850
Wichita, KS   67202                  Wichita, KS   67202
Telephone: (316) 269-6445         Telephone: (316) 269-6445
Fax: (316) 269-6175                  Fax: (316) 269-6175
E-mail: john_henderson@fd.org    E-mail: tim_henry@fd.org

14